UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BEVERLY AHNERT Individually and as Executrix
of the Estate of Daniel Ahnert, Deceased,

        Plaintiff,

        v.                               Case No. 13-C-1456

EMPLOYERS INSURANCE COMPANY OF WAUSAU,
PABST BREWING COMPANY,
SPRINKMANN SONS CORPORATION,
WISCONSIN ELECTRIC POWER COMPANY,

        Defendants.

ORDER DENYING PABST'S MOTION FOR SUMMARY JUDGMENT (DOC. 135)

        Pabst Brewing Company moves for summary judgment on plaintiff's claims that asbestos-containing products on the Pabst premises caused Daniel Ahnert to contract asbestos-related diseases. Daniel Ahnert filed a lawsuit in this district in 2010 alleging that he had been diagnosed with non-malignant asbestosis caused by asbestos exposure. *Ahnert v. CBS Corp., et al.,* Case No. 10-156 (E.D. Wis.) Shortly thereafter, the Judicial Panel on Multidistrict Litigation transferred the case to the Eastern District of Pennsylvania, where it was consolidated for pretrial purposes as part of MDL 875. Case No. 10-67443 (E.D. Pa.) Ahnert filed a new suit in Milwaukee County Circuit Court after he was diagnosed with mesothelioma. *Daniel Ahnert et al. v. Allied Insulation Supply Co., Inc., et al.,* Case No. 2011-CV-551. On July 7, 2011, Ahnert died and his wife, Beverly Ahnert (hereinafter "plaintiff"), was appointed executrix of the estate. She dismissed the Milwaukee County action and filed a third lawsuit in the Eastern District of Wisconsin, alleging that Daniel Ahnert suffered from asbestos related diseases . . . including without

limitation asbestosis." (Doc. 1, ¶ 23.) The January 4, 2011, malignant mesothelioma diagnosis claim was included. (Case No. 13-1456, Doc. 1 at 23.)

Four years after the MDL case was filed and three years after the mesothelioma diagnosis, plaintiff sought leave to amend the MDL complaint to add the mesothelioma claim. Judge Eduardo C. Robreno of the MDL denied the motion on May 22, 2014, because discovery had closed and summary judgment motions were briefed. (Case No. 10-67443 (E.D. Pa.), Doc. 406.) In addition, Judge Robreno denied Pabst's motion for summary judgment, finding that "a reasonable jury could conclude from the evidence that decedent was exposed to respirable asbestos from insulation at the Pabst facility (and perhaps also disturbed by Pabst employees during maintenance work) such that it was a 'substantial factor' in the development of his illness." (Case No. 10-67443 (E.D. Pa), Doc. 411 at 11.) Judge Robreno also concluded that plaintiff was not required to provide expert medical causation evidence linking decedent's illness to a product or exposure for which Pabst would be liable. On the other hand, he ruled that the duty owed by Pabst to Daniel Ahnert and the application of Wisconsin's construction statute of repose were unsettled issues of Wisconsin law that would be best decided by the transferor court. That case has since been transferred back to this district where it is pending before U.S. District Judge Pamela Pepper with new motions for summary judgment.

Meanwhile, Pabst, Sprinkmann, L&S, BSIS, WEPCO, and Foster Wheeler filed summary judgment motions in the pending case. Because this court had a number of concerns after reviewing the motions, it scheduled oral argument for November 9, 2015, and December 10, 2015. During the first hearing, plaintiff agreed to dismiss all claims against BSIS and L&S, as well as her punitive damages claims against Pabst and Foster

2

Wheeler. Additionally, the court addressed a number of concerns regarding witnesses who were first identified after discovery closed and in opposition to summary judgment.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a genuine issue of material fact for the cause of action to survive. *Id*. at 247–48, 106 S. Ct. 2505. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir.1997). Failure to support any essential element of a claim renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505. The Supreme Court has explained that, "regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex Corp.*, 477 U.S. at 323.

3

## FINDINGS OF FACT[1]

Daniel Ahnert was a Steamfitter and member of Steamfitter's Union Local 601 in Milwaukee, Wisconsin, from 1955 through 1992. (Pl.'s Ex. 1, ¶ 16.) In 2009, Ahnert was diagnosed with asbestosis, and Dr. Stephen Haber determined Ahnert developed asbestos related pleural disease from his occupational exposure to asbestos. (Pl.'s Ex 2 at 5-6.) Dr. Haber also determined in his report that Ahnert was diagnosed with malignant mesothelioma in December of 2010, which was the cause of his death on July 7, 2011. (*Id.*) Indeed, mesothelioma is listed as the primary cause of death on Daniel Ahnert's death certificate. (Pl.'s Ex 3.) Dr. Haber opined that Ahnert's cumulative asbestos exposure, from any and all products, contributed to his asbestos disease. (Pl.'s Ex 2 at 5-6.) Notably, Ahnert died before testifying in a deposition.

Robert Wolter was also a member of the Steamfitters and Pipefitters Union Local 601 out of Milwaukee. (Pl.'s Ex. 17 at 10-11, 20-22.) Wolter worked at Pabst Brewery at the same time as Ahnert during the period from 1955 to 1959 and was regularly in the same area at the same time performing the same tasks. (*Id.* at 13-22.) Wolter was deposed in the 2010 lawsuit on October 25, 2013. He testified that he recalled Daniel Ahnert working at Pabst for approximately six weeks in 1959, but did not work side by side with Ahnert at Pabst and that he never saw Ahnert work around somebody else working with insulation. Indeed, the only material that Wolter associated with asbestos was insulation. (*See* Wolter Dep. at 66: 17-19; 68: 10-13; 71: 11-19.)

---

[1] For purposes of summary judgment, this court did not include plaintiff's proposed findings of fact that were not supported by a citation to the record and/or other supporting materials as required by Civil Local Rule 56(b)(2)(B)(ii).

4

Robert Wolter recalled that Ahnert worked on the tanks that were being reinstalled, and that pipe insulators were installing Kaylo pipecovering insulation.[2] (Pl.'s Ex. 17 at 20-23; Ex. 16, ¶ 6.) Wolter did not recall seeing Ahnert wearing a mask. (Pl.'s Ex. 17 at 74.) In his declaration, Wolter averred that to remove tanks, Ahnert disconnected and reconnected the piping running into and out of the tanks so that about 60% of the time, insulators were 10 to 30 feet from him producing "quite a bit of dust as" they cut pipe insulation pieces that were about three feet long. (Pl.'s Ex. 16, ¶ 5; Ex. 17 at 21-26.) This process created a lot of dust.

Pabst employees were also doing work on the pipes as Ahnert worked on them. (Pl.'s Ex. 17 at 28-29.) Sprinkmann was the only insulation contractor at Pabst. (Pl.'s Ex. 22 at 14: 6-9; Pl.'s Ex. 21 at 18: 3-9.)[3] Further, a Sprinkmann employee was stationed full time at Pabst throughout the time period of the Pabst job. (Pl.'s Ex. 20 at 31: 9-33: 8, 43: 4-7; Pl.'s Ex. 21 at 18: 15-16; Ex. 18 at 973.) In addition, Jack Wetzel, a delivery man for Sprinkmann, made 50 deliveries per year of block insulation, pipecovering, and insulating cement, including Carey, Eagle "66," and "One Cote." (Pl.'s Ex. 19.) Wetzel made a

---

[2] Pabst urges the court to disregard the testimony of Robert Wolter on the ground that Wolter gave the deposition in the MDL and Wolter's declaration was stricken from the record by Judge Strawbridge's November 16, 2012, memo. However, Wolter was disclosed in this litigation and his testimony identified for Pabst. Further, there were two rounds of summary judgment in the MDL and the testimony was stricken after the first round because it had not been disclosed. After the second round of briefing, Judge Robreno cited Wolter's testimony in his decision denying Pabst's summary judgment motion.

[3] Pabst objects to a number of the proposed findings on the ground that the "evidence was not adduced in this matter and Plaintiff has made no effort to introduce this testimony as evidence in the case." However, Pabst does not contend that the witnesses were not disclosed. During the December 10, 2015, oral argument plaintiff identified the dates of disclosure. Although Pabst complains that plaintiff's initial disclosures were voluminous and that Pabst never served a verified response to interrogatories, Pabst conceded that it never sought relief from this court in a motion to compel or otherwise. Accordingly, the court will not strike the exhibits.

delivery to Pabst "about every three weeks" and delivered approximately 75% of the material Sprinkmann supplied to Pabst.  (Pl.'s Ex. 19.)

The Federal Register's list of asbestos containing products denotes Kaylo, Carey cement, Eagle "66," and One-Cote as asbestos containing.  (Pl.'s Ex. 6 at 5156, 5145, 5146.)  Thermal systems insulation (molded, block, cements/muds, mastics) installed on piping, boilers, turbines, and other large equipment was at least 10-15% asbestos-containing before the enactment of OSHA regulations in 1972.  (Pl.'s Ex. 7 at general report at 15-17; Ex. 6 at 5156, 5145, 5146.)  Gaskets in industrial settings were made from a range of 50 to 80% asbestos, and were in use from the 1940s until the 1980s.  (Pl.'s Ex. 7 at general report at 21-22.)   Sheet packings are 30-50% asbestos, and rope yarn packings are 75-100% asbestos.  (Pl.'s Ex. 7 at general report at 25.)  Once installed, the asbestos-containing thermal system insulation materials continued to be in place for many years or decades.  (Pl.'s Ex. 8, ¶ 9.)

An extensive body of medical literature about the health hazards of asbestos fibers existed before Ahnert first worked at Pabst in the late 1950s.  (Pl.'s Ex. 23, ¶¶ 7-30.)  The expert testimony of Dr. Henry Anderson, the Chief Medical Officer for occupational and environmental health in Wisconsin provides numerous examples of this literature.  (Pl.'s Ex. 23, ¶¶ 55-100.)  In the opinion of Dr. Anderson, by the 1930s or 1940s the health hazards of asbestos including death were "known or should have been known" to industry management.  (Pl.'s Ex. 23, ¶ 124.)

On February 25, 2010, Daniel Ahnert and Beverly Ahnert filed a personal injury action against Pabst and other defendants in United States District Court for the Eastern

6

District of Wisconsin, based on Daniel Ahnert's alleged asbestos exposure and asbestosis diagnosis. The 2010 lawsuit continues as to Pabst and other defendants.

Plaintiff alleges in her complaint that when Daniel Ahnert worked at certain premises, including Pabst, "asbestos products were being installed or removed so as to create the condition of airborne dust on a regular and frequent basis." (*See* Pl.'s Compl., ¶ 50.) According to plaintiff, as a direct and proximate result of the acts and omissions of Pabst, Ahnert suffered from asbestos related diseases, including without limitation malignant mesothelioma diagnosed on January 4, 2011 and non-malignant asbestos conditions, including without limitation asbestosis. (*See* Pl.'s Compl., ¶¶ 23, 60.)

## CONCLUSIONS OF LAW

On summary judgment, Pabst argues that there is no evidence that Daniel Ahnert was exposed to asbestos from any products on a premises owned, operated or controlled by Pabst. Accordingly, Pabst moves to dismiss plaintiff's negligence claims against Pabst because there is no question of fact as to whether Daniel Ahnert inhaled asbestos-containing dust from products on a premises owned, operated or controlled by Pabst so as to cause injury. Further, as discussed above, plaintiff is no longer pursuing its punitive damages claim against Pabst.

As an initial matter, count III of the complaint alleges negligence by Pabst and Wisconsin Electric Power Company as premises owners. (Doc. 1, ¶¶ 37 - 62.) According to the complaint, Daniel Ahnert was a "frequenter working places owned or controlled" by Pabst, asbestos products were being installed or removed so as to create the condition of airborne asbestos on a regular basis," and Pabst knew of the condition and knew or should have known of the health hazards. (Doc. 1, ¶¶ 49-52.) Plaintiff specifically asserts that

Pabst had a duty to frequenters such as Daniel Ahnert to "provide a safe place as set forth under the common law and codified in Wis. Stat. § 101.11.

Wisconsin's safe place statute, Wis. Stat. § 101.11, creates a non-delegable statutory duty for premises owners distinct from those arising under common law:

> Every employer . . . shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

Wis. Stat. § 101.11(1). This statute imposes a duty on premises owners to construct, repair, and maintain premises so as to make them safe for employees or "frequenters." *See Anderson v. Proctor & Gamble Paper Prods. Co.*, 924 F. Supp. 2d 996, 1001–02 (E.D. Wis. 2013) (citations omitted). A "frequenter" is a person that is someone other than an employee or trespasser at the place of employment. *See* Wis. Stat. § 101.01(6). An employee of an independent contractor doing work on the premises is a frequenter working in a place of employment. *Id.* Additionally, the safe place statute requires owners to furnish and use safety devices and safeguards, and to adopt and use methods and processes reasonably adequate to render the place of employment safe. While an owner does not need to guarantee absolute safety, it must provide an environment as free from danger to the life, health, safety, or welfare of employees and frequenters as the nature of the premises will reasonably permit. *Id.*

8

The statute protects against unsafe "structural defects," as well as "unsafe 'conditions associated with the structure' of a building." *Id.* at 1002. If a "hazardous condition results from an unsafe condition associated with the structure, such as a defect attributable to the failure to safely repair or maintain, liability will only be found where the owner had actual or constructive notice of the defect." *Id.* The statute does not, however, "involve reckless or negligent acts of persons on the premises." *See Hofflander v. St. Catherine's Hosp. Inc.*, 2003 WI 77, ¶ 91, 262 Wis.2d 539, 664 N.W.2d 545. This is known as the "acts of operation" rule. *See Id.*

The Wisconsin Court of Appeals has held that the release of asbestos dust into the air during regularly-conducted repair of steam pipes created an "unsafe condition" sufficient to support a plaintiff's claim that the factory owner failed to make its factory "safe" as required by the statute. *See Calewarts v. CR Meyer and Sons Co.,* 2012 WL 2546946 (Wi. App. July 3, 2012)(unpublished decision). In another case, the court found that the plaintiff had alleged an unsafe condition where he worked on pipes covered with asbetstos-containing insulations and the regular maintenance or repair required that the asbestos be disturbed. *Viola v. Wisconsin Elec. Power Co.*, 2014 WI App 5, ¶ 25. The Court of Appeals concluded that the plaintiff had created a genuine issue of material fact by submitting the following evidence:

> as a result of the installation, repair, and removal of asbestos-containing products, he was in constant contact with asbestos dust while working in Wisconsin Electric's buildings; Wisconsin Electric either knew or should have known not only that individuals working in its buildings were continually exposed to asbestos, but also that this exposure was harmful; Wisconsin Electric did nothing to alleviate the dangers of asbestos exposure; and Viola's exposure to asbestos caused his death. Wisconsin Electric, choosing

9

to focus solely on Viola's amended complaint, did not dispute that this evidence creates material issues of fact.

*Id.*, ¶ 26. Although Pabst attacks the reasoning of *Viola*, it has not persuaded this court on this record that any airborne asbestos was the result of an activity rather than a unsafe condition.

U.S. District Judge William C. Griesbach addressed a similar issue in *Anderson v. Proctor & Gamble Paper Products*, 924 F. Supp. 2d 996 (E.D. Wis. 2013), where the owner of a paper mill argued that it could not be liable for asbestos-related harm to an electrician employed by an independent contractor. Judge Griesbach held that the release of asbestos dust into the air during regularly-conducted repair work of a paper mill created an unsafe condition associated with the structure. *See Id.* at 1003.

Taking the evidence in the light most favorable to the nonmoving party, as the court must at this stage of the litigation, there is evidence that creates a genuine issue of material fact under the safe place statute. Wolter testified that he worked with Daniel Ahnert at Pabst, and that Pabst employees were on site draining pipes. Further, the work of disconnecting, reconnecting, and reinsulating pipes created "quite a bit of dust." On the other hand, Pabst has produced no evidence to support a finding that it relinquished custody or control over the premises to any party during this time frame or that at the time of any relinquishment the premises were otherwise safe. Jack Wetzel, a deliveryman for Sprinkmann, testified that he made deliveries to Pabst between 1955 to 1972 approximately every three weeks and that he delivered asbestos-containing materials, including Eagle 66 cement, and about 75 percent of the materials were high temperature insulation materials.

Pabst argues that, for constructive notice, the general rule is that the hazard must exist for a sufficient length of time to allow the vigilant owner to discover and remedy the situation. *See May v. Skelley Oil Co.*, 83 Wis. 2d 30, 36-37, 264 N.W.2d 574 (1978). However, there is evidence that Pabst had at least constructive notice that asbestos was present and that fibers posed a health hazard. Whether the amount of time that Pabst had to discover and remedy the situation is sufficient is an issue of fact for the jury. Consequently, the court finds a genuine issue of material fact as to whether Daniel Ahnert's mesothelioma was caused by a violation of the safe place statute.

Pabst also asserts that the plaintiff's claims are barred by Wisconsin's statute of repose, Wis. Stat. § 893.89. The statute provides as follows:

> Action for injury resulting from improvements to real property. (1) In this section, "exposure period" means the 10 years immediately following the date of substantial completion of the improvement to real property.
>
> (2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity, against the owner or occupier of the property or against any person involved in the improvement to real property after the end of the exposure period, to recover damages for any injury to property, for any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property. This subsection does not affect the rights of any person injured as the result of any defect in any material used in an improvement to real property to commence an action for damages against the manufacturer or producer of the material.

Whether the statute of repose bars a safe place claim was addressed by the Wisconsin Supreme Court in *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, 291 Wis.2d 132, 137, 715 N.W.2d 698, 2006 WI 61. The Supreme Court explained that "ten years after a structure is substantially completed, § 893.89 bars safe place claims resulting from injuries caused

11

by structural defects, as opposed to safe place claims resulting from injuries caused by unsafe conditions associated with the structure." *Id.* The distinction is critical because a structural defect is "a hazardous condition inherent in the structure by reason it is design or construction" whereas an unsafe condition arises when an owner fails to repair or maintain the place of employment when the owner has actual or constructive notice of a defect. 2006 WI, ¶¶ 8-13. As discussed above, at least three courts have classified airborne asbestos as an unsafe condition.

Pabst focuses on the language in the statute that bars claims relating to improvements rather than maintenance or repair work. Recently, in *Peter v. Sprinkmann Sons Corp.*, 2015 WI App 17, 360 Wis. 2d 411, 860 N.W.2d 308, the Wisconsin Court of Appeals held that the decedent's work at Pabst was not an improvement to property where the claims arose from daily repairs on insulation. The evidence established that Sprinkmann had an employee working at Pabst on a daily basis doing regular, daily repairs to the insulation on the machinery pipes until 1979 when it lost the Pabst contract. 2015 WI App, ¶¶ 3, 24. Pabst argues that Daniel Ahnert, unlike Peter Sprinkmann, was "an employee of an independent contractor working on improvements to real property for a short period of approximately six weeks." The court finds evidence in the record to conclude that Daniel Ahnert was an employee of an independent contractor and that he worked at Pabst for approximately six weeks. However, there is nothing to establish, as a matter of law, that the work involved an improvement to real property.

The Wisconsin Supreme Court defines improvement, based on common usage and the dictionary definition, as follows: "[A] permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money

12

and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Kallas Millwork Corp. v. Square D Co.,* 66 Wis.2d 382, 386, 225 N.W.2d 454 (1975). In *Kohn v. Darlington Community Schools,* 2005 WI 99, 283 Wis. 2d 1, 698 N.W.2d 794, the Wisconsin Supreme Court held that bleachers at a high school constituted an improvement because they were a permanent addition to real property and were installed at a cost of $16,167, making the track and football stadium more valuable. 2005, ¶ 29.

In the case at bar, there are no contracts, no descriptions of the work performed beyond Wolter's testimony, no evidence of expenditures or even a discussion of the utility of the reinstalled tanks. Thus, the court cannot find, as a matter of law, that the work done in 1958-59—involving the reinstallation of tanks—was an improvement. For this court to apply the defense and bar plaintiff's claims, Pabst needed to come forward with some evidence to support the application of the statute.

As a final matter, Pabst has argued that it is entitled to summary judgment because no expert has a specific causation opinion as to Pabst. However, plaintiff proffered evidence that Daniel Ahnert worked at Pabst during the reinstallation of tanks, that insulators worked in proximity to Wolter and Ahnert, that Sprinkmann delivered asbestos-containing products to Pabst during the relevant time, that Kaylo—an asbestos-containing insulation used in pipecovering—was used on premises, that Ahnert did not wear a mask, that Pabst employees were present, that literature at the time suggested asbestos caused disease, and that Daniel Ahnert's death was caused by mesothelioma. Dr. Haber opines as follows:

13

> Based upon my review of these records and materials, Mr. Daniel Ahnert was diagnosed with malignant pleural mesothelioma in December 2010. He had significant occupational asbestos exposures in his work as a pipefitter/steamfitter/welder beginning in the mid-1950s. All of his occupational asbestos exposures were of sufficient latency for causation of his mesothelioma. He had radiographic evidence of asbestos related pleural disease and asbestosis, providing objective evidence of his past asbestos exposures. He had significant pain and suffering related to this cancer.
>
> In my opinion, and to a reasonable degree of medical probability, his cumulative occupational asbestos exposures were a significant contributing factor to causing his malignant pleural mesothelioma. Given that he died from mesothelioma, his death is attributable to asbestos.

(Pl.'s Ex. 2 at 6.) Pabst never disputed plaintiff's proposed findings regarding Dr. Haber's opinion and has not filed a *Daubert* motion or otherwise moved to strike his opinion. Hence, at this stage, the court will adhere to the fundamental principle that reasonable inferences should be drawn in favor of the nonmoving party.[4] *Cotton v. Tolan*, 124 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). It will be for the jury to decide whether plaintiff's evidence is sufficient. Now, therefore,

IT IS ORDERED that Pabst's motion for summary judgment is denied.

Dated at Milwaukee, Wisconsin, this 7th day of January, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

---

[4] In the MDL action, Judge Robreno rejected Pabst's argument that Ahnert's claims fail because she has no expert medical causation evidence linking Daniel Ahnert's illness to a product for which Pabst is liable. Judge Robreno found no expert evidence was required and that the issue was one for the jury. (Case No. 10-C-67443-ER, Doc. 411 at 11.)